## James H. Price v. Stephen W. Dearborn.

In assessing the damages in a defaulted action, the court may appoint a master to determine the amount to be assessed; but though he be designated as "auditor," such appointment is not a proceeding under the statute which provides for the appointment of auditors to state the accounts between the parties, and consequently neither party has the right, under the provisions of sec. 5, chap. 187, Revised Statutes, to have the question of damages submitted to a jury upon the return of his report in such case.

If either party has the right, upon the default being entered, to have the damages assessed by a jury, the right is waived by neglecting to submit a motion therefor until after the auditor appointed for that purpose has made his report.

It is no objection to the report of the auditor in such case, that it is made in the alternative; one of the two or more sums being reported as damages, depending upon questions of law raised by the facts stated in the report, and submitted for the decision of the court.

A deputy sheriff, having collected money upon an execution delivered to him by the attorney of the creditor, for which he was in default, was at the same time indebted to the attorney personally upon account, and upon severa

Price *v.* Dearborn.

promissory notes, aud had also an account against the attorney; but it did not appear in whose favor the balance would be upon an adjustment of their mutual claims. The deputy delivered to the attorney three promissory notes, signed by himself, payable to a third person, or order, and indorsed by the payee, and received from the attorney his accountable receipt, though containing a promise " to procure the notes to be discounted, and to account to the deputy for the proceeds thereof, when paid." The notes were paid, and the amount thereof received by the attorney ; and after suit brought by the creditor against the high sheriff for the default of the deputy in neglecting to pay over the money collected upon the execution, the deputy directed the attorney to apply the proceeds of the notes upon the execution. — *Held*, in the absence of any further evidence of an agreement between the attorney and deputy, relative to the application of the proceeds of the notes, that they could not be considered as received by the attorney on account of the liability of the deputy for the money collected on the execution.

THIS is an action on the case, against the defendant, late sheriff of the county, for the default of his deputy, G. W. Towle, in not paying over money collected on an execution in favor of the plaintiff against Belknap, Hale and Jones. At the September term, 1854, the defendant filed a confession of the plaintiff's cause of action, to the amount of sixty-two dollars, and pleaded the general issue as to the residue of his claim. The plea and confession were filed on the 5th of October, 1854, and at the same term, under date of November 5, 1854, the following entry was made: " Default; J. W. Emery, auditor, to determine amount of damages." At the November term, 1855, the auditor made report, setting forth the following facts : namely, That the plaintiff recovered judgment against Belknap, Hale and Jones at the February term of the court, 1850, for $6,414 debt and $104 costs ; that A. R. Hatch, Esq., was the attorney of the plaintiff in the suit in which the judgment was rendered, and that the attorney took out execution thereon, and delivered the same to said Towle, a deputy of the defendant, for collection ; that Towle collected a large sum of money upon the execution, by the sale of certain personal property thereon, and paid over part of the money so collected to said Hatch, as the attorney of the plaintiff; that on the 10th of March, 1851, said Towle, and Hatch as the attorney of the execution creditor, took an account of the sums of money which had been received by

Towle upon the execution, of the amount which had been paid over by Towle to Hatch on account thereof, and of the fees of Towle upon the execution, and there was then found remaining in the hands of Towle, which he had collected upon the execution, after allowing him for all he had paid over to Hatch, and for his fees on the execution, the sum of $433.71, which sum Towle agreed to pay over to Hatch, as the attorney of the plaintiff, and which Hatch agreed to receive as the balance then due from Towle on account of his execution; that on the 30th of May, 1851, Towle paid to said Hatch one hundred dollars, in part of the balance so found due; that in January, 1852, Towle gave to Hatch three promissory notes, described in the following receipt, which have been paid, and the amount thereof received by Hatch, and at the same time Hatch gave to Towle the following receipt: "Received of G. W. Towle his three promissory notes, each for one hundred dollars, dated this day, payable to J. M. Locke, or order, one in sixty days, one in ninety days, and one in four months, and each indorsed by said Locke, which notes I am to procure to be discounted and am to account to said Towle for the proceeds thereof when paid. Portsmouth, January 2, 1852. (Signed,) A. R. Hatch;" that at the time of delivering said notes to Hatch, and taking said receipt therefor, Towle had an account against Hatch for fees as a deputy sheriff, no settlement having been made between them for such fees since 1843; that said Hatch at the same time held notes against Towle to the amount of about $216, some of which were for money loaned, and also had an account against Towle of some years' standing; but that nothing further appeared as to the amount of their respective accounts; that in August, 1855, after the commencement of this action, Towle caused a notice in writing to be served on said Hatch; directing him to appropriate the money received upon said three notes toward the payment of said execution, and that no further agreement was proved between Hatch and Towle in relation to the application of the proceeds of the three notes than appears from the foregoing facts.

The auditor then reported that, if in the opinion of the court, the proceeds of the notes ought to be applied upon the execution, there was, on the 5th of October, 1854, a balance due from Towle on account of money collected by him upon said execution, of $65.40; but if not, then there was such balance due on the 7th of January, 1856, of $433.24.

The plaintiff moved for an assessment of damages in the largest sum. The defendant moved that the report be recommitted to the auditor, with instructions to strike out all contained therein except a statement of the amount in the hands of Towle, collected by him on the execution, and not paid over to the plaintiff or his attorney, and that the question of damages be submitted to a jury.

*Hatch*, for the plaintiff.

*Towle*, for the defendant.

Sawyer, J. The entry upon the record of the court below in this action, is that the defendant was defaulted. Additional entries were also made of judgment by agreement, and of the appointment of an auditor to assess the damages. The entry upon the docket of " Judgment by agreement," implies that the parties either have entered into or will enter into, and in due time file with the clerk an agreement in writing, setting forth the nature and amount of the judgment to be rendered in the action, and judgment is to be entered up in accordance with the terms of the agreement, as upon the confession of judgment in the English practice. Without an agreement thus filed the entry amounts to nothing. It is that alone which gives it validity, as it is upon the agreement that the judgment is founded. *Coburn* v. *Rogers*, 32 N. H. 372. The entry, then, of judgment by agreement after the default, must be understood as meaning that if the parties should make and file an agreement as to the amount for which judgment should be rendered upon the default, this would supersede the necessity of calling out the auditor to

assess the damages; while, if no such agreement should be filed, then the damages must necessarily be assessed as in other cases of defaulted action, and the auditor was appointed with a view to the assessment of the damages by him, in the event of no such agreement being filed.

The writ of inquiry which is issued in the English courts for the assessment of the damages in defaulted actions, is unknown in our practice, and it is there generally dispensed with in all cases where the assessment of the damages is merely matter of computation, as in actions upon promissory notes and bills of exchange, in which cases the practice has long prevailed of referring the question as to the amount of principal and interest due upon the instrument declared on, to a master, or prothonotary, and his report supersedes the necessity of a writ of inquiry. *Shepard* v. *Charter*, 4 T. R. 275; *Rastleigh* v. *Salmon*, 1 H. Black. 252; *Longman* v. *Fenn*, Id. 541; *Holdipp* v. *Ordway.* 2 Saund. 108, and note 2. In case a writ of inquiry is issued, the interlocutory judgment is first entered up, "that the plaintiff ought to recover his damages; but because the court know not what damages the said plaintiff hath sustained, therefore the sheriff is commanded that, by the oaths of twelve honest and lawful men, he inquire into said damages, and return such inquisition into court." Jacobs' Law Dict., Judg't I. The writ is issued accordingly, directed to the sheriff, who, in the execution of it sits as judge, and tries, by a jury, what damages the plaintiff hath really sustained, under very nearly the same rules of law as upon a trial by jury at *nisi prius*. When their verdict is rendered, the sheriff returns the inquisition, and final judgment is thereupon entered, that the plaintiff recover the damages so assessed. Some of the authorities would seem to sustain the view, that as the writ of enquiry is merely an inquest of office, to inform the conscience of the court, they may, if they please, themselves assess the damages, without the intervention of the writ. *Bruce* v. *Rawlins & als.*, 3 Wils. 61. This view is supported by other authorities only so far as it relates to actions brought for a sum certain, or which may be made certain by computation. *Renner* v. *Marshall*, 1 Wheat. 218.

The established practice of the English courts, however, would seem to be that the plaintiff in defaulted actions is entitled to the writ of inquiry at his election, and it is only when he assents, that the damages will be assessed by the court, or by a master or prothonotary appointed by the court. *Holdipp* v. *Ordway, ubi supra; Blackmore* v. *Fleming,* 7 T. R. 442. The defendant having suffered default, has no election in the case.

The rules which govern the English practice have but little application to ours. · With us, in defaulted actions, the court assess the damages, unless for some special reason they order an inquiry into the damages by a jury ; and in case that is done, no writ of inquiry issues to the sheriff, but the question is submitted by the court to one of the juries in attendance. *Bowman* v. *Noyes & al.,* 12 N. H. 307 ; *Chase* v. *Lovering,* 7 Foster 295. If the court undertake to make the assessment, there is nothing in the nature of the proceeding to forbid that the question be referred to a master for informing the conscience of the court, and his doings, being approved and adopted by the court, become theirs. Such has long been the practice, and it is one of great convenience, both to the court and the parties, however the person may be designated to whom the question is referred ; whether it be by the name of auditor, which is not unusual in our practice, or assessor, as he is sometimes designated in other States ; *Gardner* v. *Fields & als.,* 1 Gray 151 ; or master, as may perhaps be the more appropriate designation ; the name by which he is designated is immaterial, the character of his duties being the same, namely, to investigate the damages sustained by the plaintiff under the cause of action set forth in the declaration, and to report thereon for the information of the court. Though he be styled auditor, his duties are not those contemplated by the statute providing for the appointment of auditors, to state the accounts between the parties. His appointment consequently is not a proceeding under the authority of that statute, and its provisions, sec. 5, chap. 187, of the Revised Statutes, which give to either party the right to a trial by jury, if dissatisfied with the auditor's report, and make that report

evidence to the jury upon the trial, have no application to a case of this character. If, independent of the statute, either party has the right in the first instance, upon a default being entered; to have the damages assessed by a jury, it is quite clear that it is too late to claim the right, after the question has been investigated by a master or auditor, appointed for that purpose, and his report has been made. If the right can now be claimed, all the proceedings before the auditor go for nothing. His report, in whatever form it may be presented, could not be used as evidence to the jury, and would consequently become a nullity. The neglect to move the court that the damages be assessed by a jury until after the report was returned, must be considered as a waiver of the right, if such existed in either party.

The motion of the defendant that the damages be assessed by a jury, must therefore be denied.

The view which has been taken in considering that question, also disposes of the other motion submitted by the defendant, that the report be re-committed, with instructions to strike out all of the report except a statement of the amount in the hands of Towle, collected by him upon the execution, and not paid over to the plaintiff or his attorney. This motion is based upon the idea that the report may be evidence to the jury, and that, in accordance with the practice in cases where auditors' reports contain more than a mere statement of the accounts between the parties, and it is proposed to use them as evidence on the trial before the jury, the report must be re-committed in order that it may be amended in the particular suggested, and thus be made competent as evidence. The report in this case can in no event be evidence to the jury. Its only purpose is to give that information to the court which is necessary to enable them to make a proper assessment of the damages. If the amount of the damages depends upon the decision of a doubtful question of law, raised by the facts in the case, it is proper that the report be in the alternative, giving one sum as the result upon one view of the question, and another upon the other. Such is this report, and the plaintiff moves that the damages be assessed in the largest

sum reported. The judgment must be for that sum unless the proceeds of the three notes of January 2, 1852, are to be considered as having been received by Hatch as the attorney of the plaintiff on account of the liability of Towle for the money collected by him upon the execution ; and we think it clear that they cannot be so considered. There is nothing in the proceedings between Hatch and Towle in relation to the notes to indicate that Hatch was acting in behalf of the plaintiff, or as his attorney. The receipt given by him contains no allusion to the plaintiff or to the liability of Towle on account of the money collected by him on the plaintiffs' execution. It is given by Mr. Hatch on his own account, and subjects him personally to the liability involved in the promise which it contains. That promise is that he, Hatch, will account to Towle for the proceeds of the notes. This, undoubtedly, implies that he will pay over to Towle, on demand, whatever balance of money there might be in his hands arising from the notes, after satisfying such demands as he, Hatch, might hold in his own right against him ; but it does not imply that he would pay out that balance to any third person who might hold a claim against him, or that he would account for it by rendering up to him such claims as he then held, or thereafter might hold against him as the attorney of others.

The report finds that there was no agreement relative to the application of the proceeds other than is contained in the receipt itself. In the absence of any further proof of such agreement than that which the receipt furnishes, Hatch would not be at liberty to prove, in a suit brought against him by Towle for the money, that he had applied it to discharge the liability of Towle to the plaintiff. Such application would be beyond the stipulations of the contract, as evidenced by the receipt.

Nor was it in the power of Towle, without the assent of Hatch, by means of the notice served on the 30th of August, 1855, subsequent to the bringing of this suit, to give to the funds a direction different from that contemplated by the parties at the date of the receipt. By that act of Towle the right of the plaintiff to his full damages could not be affected.

There is a provision in the case that either party may submit to this court evidence taken with notice in relation to an alleged inadvertent omission on the part of the defendant to lay before the auditor this claim of the deputy, for fees in the service of the original writ, as a deduction proper to be made in the assessment of the damages. The object of this provision must have been to enable the defendant, by such evidence, to satisfy this court that the omission occurred under such circumstances as to entitle him to relief. No evidence is presented to the court upon that point. The case does not find that there was such omission, and we cannot assume it. Beside, if proved, it is not necessary for the protection of the deputy that this claim should be allowed in diminution of the damages in this case, if, on legal principles, it may be so allowed — of which there is great doubt — as the deputy still has his right of action against the party by whom he was employed to do the service; and if the report should be recommitted, it could be done only upon such terms as would indemnify the plaintiff against all costs and expense occasioned to him thereby. Those terms would be quite likely to exceed the amount of the deduction, as it is suggested in the argument that the amount of the fees is but about twenty dollars.

Judgment must be rendered for the plaintiff for the sum of four hundred and thirty-three dollars and twenty-four cents, and interest thereon from the 7th of January, 1856.